504 P.2d 40

**Louis J. MONTER, Plaintiff and Appellant,**

**v.**

**KRATZERS SPECIALTY BREAD COMPA- NY, Defendant and Respondent.**

**No. 12810.**

Supreme Court of Utah.

Dec. 5, 1972.

Bryce E. Roe, William A. Stegall, Jr., Roe, Fowler, Jerman & Dart, Salt Lake City, for plaintiff and appellant.

Ralph J. Marsh, of Backman, Backman & Clark, Salt Lake City, for defendant and respondent.

ELLETT, Justice:

The appellant as plaintiff brought an action in unlawful detainer against the respondent alleging that there was a default in rent payments. He prayed for restitution of the leased property and following restitution for leave to amend the complaint to include a prayer for rent and damages. The defendant failed to answer the complaint, and on Friday, November 5, 1971, a default judgment was entered wherein plaintiff was given the possession of the property and the right to amend the complaint within a reasonable time following restitution to pray for rent due and damages. On Monday, November 8, 1971, the plaintiff caused an execution to be issued and had the sheriff evict all employees of defendant and to change the locks on the doors. A few hours later the property was returned to the respondent.

Section 78–36–10, U.C.A.1953, so far as material provides:

If upon the trial . . . ., the finding of the court, is in favor of the plaintiff and against the defendant, judgment shall be entered for the restitution of the premises; and if the proceeding is for unlawful detainer after . . . default in the payment of rent, the judgment shall also declare the forfeiture of such lease or agreement. . . . When the proceeding is for an unlawful detainer after default in the payment of the rent, and the lease or agreement under which the rent is payable has not by its terms expired, execution upon the judgment shall not be issued until the expiration of five days after the entry of the judgment, within which time the tenant . . . ., may pay into court for the land-

lord the amount of the judgment and costs, and thereupon the judgment shall be satisfied, and the tenant shall be restored to his estate; . . .

The lease was in writing and would not by its terms expire until February 28, 1975.

By evicting the tenant within five days from the entry of the judgment, the plaintiff committed a tort. Even if he had waited the full five days before executing on the judgment, he would have acted wrongfully. When the landlord · prevails in an unlawful detainer action because of a failure on the part of a tenant to pay rent under a lease which has not expired, he cannot have any judgment unless he shows that there is rent due and the amount thereof; and when that is done, the tenant has five days in which to pay the judgment and costs, and then he will be restored to the premises under his lease. The landlord cannot prevent the tenant from paying the judgment and regaining his rights under the unexpired lease by the device of failing to have the amount of rent due included in the judgment. In such a case unless the judgment determines the amount of rent due, it is defective, and the restitution part cannot be lawfully enforced.

The appellant claims that Rule 62(a) of the Utah Rules of Civil Procedure permits immediate execution unless the court in its discretion otherwise directs.

Section 78–2–4, U.C.A.1953, provides that the Rules of Civil Procedure may not affect substantive rights of a litigant, and we do not hold to the contrary. We think the right to be relieved from a judgment of eviction by paying the delinquent rent is a substantive right, and therefore this contention of the plaintiff is not a valid one.

The default judgment was set aside and the respondent permitted to answer. It set up a counterclaim for damages wherein it prayed for "$5,000 plus any additional sum which defendant can establish as damages at the time of trial," together with $5,000 punitive damages, attorney's fees, and costs.

No objection was made to the counterclaim, and trial resulted in a judgment for the plaintiff in the sum of $997.49 for rent and $1,169.20 for damages, making a total judgment for the plaintiff in the amount of $2,166.69; and a judgment for the defendant in the amount of $102,278.56 for loss of business and $3,000 punitive damages, making a total judgment for defendant in the amount of $105,278.56. The judgment for the plaintiff was offset against that for the defendant, and a net judgment was given to the respondent of $103,111.87. Other items in the judgment are not of concern in this appeal.

If there is substantial evidence to support the findings upon which the judgment is rendered, the judgment must be

sustained.[1] The fact that it is difficult to calculate damages will not prevent an injured party from recovery. However, a judgment cannot be based upon mere speculation.

■ Where the loss is pecuniary and is present and can be measured but no sufficient evidence is given as to the duration, or from which the duration, of time during which the damage will continue can be inferred, the jury, or the court sitting without a jury, can allow only nominal damages.[2]

In this case it was stipulated that the Continental Baking Company had been ordering bakery products from the respondent which averaged during the year preceding the eviction the amount of $2,000 per month and that 53% of that amount or $1060, was net profit. The proof showed that Continental Baking Company had been a customer of respondent for seventeen years and that it had ordered bakery products in an amount of $5,000 per month up until approximately one year prior to November, 1971. There was no proof of what the amount of business was for November, 1971.

On November 8, 1971, Continental Baking Company employees were unable to get in touch with Kratzer to place an order for bakery products for the following day, and the sales manager of Continental went to Kratzers to see what was the reason for the lack of phone response. He found the place locked and promptly placed his orders with another bakery.

Despite the fact that Kratzer resumed business after a few hours' interruption, Continental failed to do any further business with it, and it is the loss of this customer which is the basis of respondent's claim for damages.

Kratzer had no contract with Continental, but it had a standing order for certain bakery products and relied upon daily orders for other items. The arrangement could have been terminated by either party at will. In fact, the great decline in the amount of sales to Continental during the preceding years shows that the business dealing was not a definite arrangement.

The sales manager of Continental testified that he had had prior difficulties with Kratzer in getting products and in the quality of the products which were supplied. While the witness said that he would not have terminated his business dealing with Kratzer except for his inability to get his order for November 9, 1971, he also testified on cross-examination as follows:

Q. Now, as to your personal experience as to the quality of the product received, have you had other experiences as to that?

1. Charlton v. Hackett, 11 Utah 2d 389, 360 P.2d 176 (1961).

2. 25 C.J.S. Damages § 26, p. 678.

A. Yes. We have had numerous occasions where, say, some hard rolls or some type of specialty bread has been stale, or what we feel is not fresh; we have had complaints from customers that we distribute this product to.

\*　　\*　　\*　　\*　　\*　　\*

Q. For you, personally, did the prior difficulties you may have had with the Kratzer Specialty Bread Company enter into your decision to terminate the account at all?

A. Yes, it did.

The evidence would justify a finding that Kratzer, because of the wrongful eviction, was unable to supply Continental with bakery products only for November 9, 1971. Thereafter, it was able to supply the needs of Continental had any orders been placed for bakery products.

The court assumed that Continental Baking Company would have continued to order $2,000 worth of Kratzer products per month for a period of ten years, and a judgment was given which was the present worth of what he thought the net profits would be for that time. Under the evidence he could just as well have taken 20 years—or one week—as the time during which Continental would have continued to order the Kratzer products. True it is that Continental had done business with Kratzer for almost 17 years, but the management of Kratzer had changed hands during the past 18 months and the business with Continental had fallen from $5,000 per month to a figure low enough to make it average $2,000 per month for the year past.

■ There was no evidence to justify an inference that Continental would order $2,000 worth of products from Kratzer for ten years. In fact, the stipulation does not show what the daily sales were. It only showed that the average monthly sale for the year was $2,000 gross. The monthly sales had been $5,000 about a year prior and were reduced so that the average was only $2,000 per month. Kratzer lost one day's sale of bread because of the wrongful eviction; but since it was in business after a few hours' delay, it is not possible to say with any degree of certainty how much damage was caused to it other than the loss of the sale for that one day. Under the evidence given in this case any other damage which can be ascribed to the wrongful conduct of the appellant is purely speculative.

■ As to the amount of punitive damages found and allowed, we think it excessive. This view is buttressed by the exceedingly high figure awarded as compensatory damages. Ordinarily there should be some relation between the amount of punitive damages and the amount of compensatory damages.[3] If the trial court had this rule of law in mind,

---

3. Falkenberg v. Neff, 72 Utah 258, 269 P. 1008 (1928).

and was fixing punitive damages at 3% of the compensatory damage, then the sum of $3,000 would be too much because of the excessive amount of the compensatory damages awarded. However, the conduct of the offending party could also have a bearing on the question of punitive damages.[4] Since the conduct of the appellant in unlawfully ousting Kratzer from a going business was clearly unjustified, we are of the opinion that the court could have awarded a substantial sum of money as exemplary damages regardless of the amount of the compensatory damages sustained.

Kratzer tendered into court as rentals due the sum of $1425. This amount was by the court ordered returned to the respondent. The amount of the judgment given to appellant was $2,166.69. The amount to be given to the respondent by way of compensatory and punitive damages should not exceed that figure. The judgment is reversed and the case remanded with directions to eliminate from the net judgment the $103,111.87 which was awarded to the defendant, thus leaving each party without any monetary judgment against the other.

Each party should bear its own costs.

CALLISTER, C. J., and TUCKETT, HENRIOD and CROCKETT, JJ., concur.

4. Ostertag v. LaMont, 9 Utah 2d 130, 339 P.2d 1022 (1959).