RAMON J. BERNARDINI ET AL. *v.* THE STEFANOWICZ CORPORATION ET AL.

[No. 305, September Term, 1975.]

*Decided December 31, 1975.*

The cause was argued before MOYLAN, MENCHINE and MOORE, JJ.

*Richard W. Emory, Jr.*, and *Peter S. Thompson, Jr.*, for appellants.

*Susan S. Miller*, with whom were *James J. Dawson* and *Cable, McDaniel, Bowie & Bond* on the brief, for appellees.

MOORE, J., delivered the opinion of the Court.

The question we are here asked to resolve is whether, in connection with the granting of specific performance of contracts for the purchase of lots upon which single-family residential units were to be constructed, the purchasers were entitled to an award of compensation measured not only by their out-of-pocket losses, but also by the "fair market net rental value" [1] of their dwellings during the period of delay in construction. The Chancellor, Raine, J., made a total award to the appellants of $20,875, constituting their out-of-pocket losses plus interest on their deposits. They assert on appeal that the award should not have included interest on their deposits but should have included an additional sum of $27,498, representing the fair market net rental value of their homes. There is no cross-appeal by the appellee builder-developer, The Stefanowicz Corporation.

I

The factual context in which the issue is joined is as follows: Between February and September, 1971 some ten families entered into written agreements with Stefanowicz for the purchase of lots in the Rolling Green development of Catonsville in Baltimore County. The lots were to be improved by dwellings "in substantial accordance" with

---

1. The "fair market net rental value" of the dwellings was an agreed dollar figure per month, multiplied by the number of months' delay for which the builder was accountable, plus 6% interest. This was subject to an offset of interest at 6% on the balance of the unpaid purchase price for the agreed period of delay.

specified types of existing Model Homes. The purchase prices varied from approximately $27,500 to approximately $32,500 with completion dates 4 to 6 months from the dates of the respective agreements. In practically all instances, deposits of $2,000 were made and each purchaser was to secure his own financing.

None of appellants' homes was ready on the dates originally specified. The delays were attributed by the builder to a variety of factors. Hurricane Agnes and other heavy rains in 1972 prevented routine progress from being made; the terrain was discovered to contain previously undetected obstacles, including rock formation and subterranean springs; and several of Stefanowicz's subcontractors did not complete their work on time.

Nonetheless, when 7 of the 10 families instituted an equitable action on February 14, 1973 in the Circuit Court for Baltimore County,[2] the builder ultimately admitted liability and entered into ten [3] separate stipulations, in most of which the out-of-pocket losses were agreed upon; and in all of which the fair market net rental value of the respective homes was established. These stipulations provide the essential factual basis for this appeal, the parties having further stipulated pursuant to Maryland Rule 1026 c 2 that no part of the transcript of testimony at a hearing before Judge Raine on December 11, 1974 was necessary for the appeal. (The latter hearing was for the limited purpose of taking testimony with respect to certain claims for out-of-pocket losses upon which the parties were unable to stipulate and, it appears, to receive argument on the question of whether fair market rental value was also an appropriate measure of damages.)

The 10 stipulations reflect delays in construction ranging from 8 months to 17 months. The out-of-pocket losses, "reasonable and foreseeable," agreed to have been sustained

---

**2.** Although designated, "Petition to Retain Funds as Security for Satisfaction of Claims," the case was treated below as a suit for specific performance.

**3.** The other three families had been permitted to intervene.

because of these delays, included some or all of the following items in the case of each family:

1. Forfeiture of rent bonus.
2. Furniture storage.
3. Child's (school) registration fee.
4. Cost of disposable diapers.
5. Child's commutation — extra travel expenses.
6. Interim telephone installation.
7. Increase in laundry bills because equipment in storage.
8. Extra moving expense.
9. Mortgage interest increase.
10. Loss of postponement of capital gains on sale of former house.
11. Cost of obtaining clothing and other personal possessions from storage.
12. Additional commuting expense (by husband) to place of employment.
13. Forfeiture of child's school registration fee.
14. Increase in child's school tuition.
15. Increase in automobile insurance (difference between city and county rates).
16. Loss of apartment deposit.
17. Expenditure to "buy out" apartment tenant.

After the court hearing on December 11, 1974, Judge Raine also allowed one of the petitioners, an F.B.I. agent, damages for loss of U. S. Government reimbursement in the sum of $1291 for relocation costs. The claim had expired because of petitioner's inability to move into the new house.

It was further stipulated that *the builder* believed that the measure of damages for its admitted liability was limited to these out-of-pocket expenses. The parties also stipulated, however, an amount of compensation based upon fair market net rental value in the case of each family purchaser, should the Chancellor deem such further award appropriate. Thus, in the case of appellants Bernardini, it was stipulated that:

(a) the length of delay for which the builder was accountable was 14 months;

> (b) the fair market rental value was $305 per month, or $4,270;
>
> (c) the builder's proper offset on the balance of the unpaid purchase price, at 6% per annum, was $2,190;
>
> (d) the purchaser was entitled to recover simple interest at 6% per annum on the fair market net rental value of the dwelling from September 1, 1972 through December 1, 1974, in the total sum of $576;
>
> (e) the final additional amount which would be due to Mr. and Mrs. Bernardini under this theory was $2,656.[4]

The Chancellor, in a written opinion filed on February 20, 1975, rejected the appellants' claims to awards based upon the theory of fair market net rental value but, as previously stated, did allow recovery of out-of-pocket losses, plus interest on the purchasers' deposits. Judge Raine stated:

> "After intensive study and consideration of the matter the court believes that the proper measure of damages are the reasonable and foreseeable expenses that the Complainants were required to make because of the Respondent's delay in completing the dwellings.[5] *The Complainants argue that in addition to these damages they should be awarded compensation for the loss of use and enjoyment of their homes, and seek to equate this with the net rental value of the dwellings during the period of delay. This Court cannot find, and has not been referred to any specific performance suit of this nature where such damages have been allowed, and the authorities cited by the*

---

4. The total amounts due pursuant to the stipulation also, of course, varied. The lowest sum was $1571; the highest was $3461.

5. The Chancellor was apparently assimilating the rule that reasonable special damages must meet the orthodox test laid down in the celebrated English case of Hadley v. Baxendale, 15 Eng. Rep. 145 (1854).

*Complainants do not seem to be applicable.* (Emphasis added.)

The Chancellor thereafter, on April 16, 1975, entered an Order for judgments against Stefanowicz for appellants' respective *stipulated* out-of-pocket losses, and, in two instances, additional foreseeable out-of-pocket expenses upon which agreement between the parties had not been reached. He also ordered that interest on the deposits held by Stefanowicz during the period of delay should be paid to each appellant.[6] Appellants contend that they should have received the fair market net rental value of their homes rather than interest on their deposits.[7] Stefanowicz maintains that the proper measure of damages was awarded. For the reasons next stated, we agree.

## II

Neither party has cited, nor in our independent research have we discerned, a case where this precise issue — whether recovery should be allowed for loss of use of a home to be constructed, ancillary to a suit for specific performance, measured by net fair market value during the period of delay — has been decided by an appellate court.

There is a clear consensus that where the case is a proper one for specific performance the Chancellor may, as a form of ancillary relief, decree compensation or damages. 1 Pomeroy, *Equity Jurisprudence,* § 237 (b) (5th ed. 1941). Indeed, an early Maryland case held that unless the monetary relief was claimed in the specific performance action, it was barred by the final decree in the equity suit under the doctrine of res judicata. *Walzl v. King,* 113 Md. 550, 77 A. 1117 (1910). The cases abound with *general* rules concerning ancillary damages in suits for specific performance. Thus, in *Ellis v. Mihelis,* 384 P. 2d 7 (Cal. 1963), Chief Justice Gibson of the Supreme Court of California stated at 15:

---

6. The average payment for out-of-pocket losses and interest on deposits was $2010.88 per family.

7. The average recovery thereby would be $4614.60 per family.

"The following general rules are applicable where damages are awarded incident to a decree of specific performance: A party to a contract for the purchase cr exchange of land who is entitled to a decree of specific performance is also ordinarily entitled to a judgment for the rents and profits from the time he was entitled to a conveyance. *The compensation awarded as incident to a decree for specific performance is not for breach of contract and is therefore not legal damages.* The complainant affirms the contract as being still in force and asks that it be performed. *If the court orders it to be performed, the decree should as nearly as possible require performance in accordance with its terms.* One of the terms is the date fixed by it for completion, and since that date is past, the court in order to relate the performance back to it, gives the complainant credit for any losses occasioned by the delay and permits the defendant to offset such amounts as may be appropriate. *The result is more like an accounting between the parties than like an assessment of damages.* (See, *e.g.,* Heinlen v. Martin, 53 Cal. 321, 342-3; Note 7 ALR 2d 1204, 1206)." (Emphasis added.)

The rationale that such awards constitute compensation rather than legal damages is thus expressed in Annot., *Specific Performance-Delay,* 7 A.L.R.2d 1204, 1206:

" *The compensation awarded as incident to a decree for specific performance is not breach of contract and is therefore not legal damages. The complainant affirms the contract as being still in force and asks that it be performed. He cannot have it both ways, performed and broken.* The situation is simply that, if the court orders it to be performed, the decree must as nearly as possible order it to be performed according to its terms, and one of those terms is the date fixed by it for its

completion. This date having passed, the court, in order to relate the performance back to it, equalizes any losses occasioned by the delay by offsetting them with money payments. *Often the result is more like an accounting between the parties than like an assessment of damages.*" (Emphasis added.)

A leading Maryland case, *Miller v. Talbott*, 239 Md. 382, 211 A. 2d 741 (1965), presented the Court of Appeals with the question of monetary relief in a controversy arising out of a contract for the sale of an *existing* country residence in Carroll County. The Millers appealed from the final decree granting specific performance and the Talbotts cross-appealed from the denial of a recovery for losses and expenses allegedly caused by the failure of the Millers to convey on the date specified. The Chancellor, Boylan, C. J., was held to have properly decreed specific performance but to have committed reversible error, requiring a remand for further proceedings, in refusing to consider an award of compensation.[8]

As disclosed in the opinion of Judge Barnes, writing for the Court of Appeals, the items of damages claimed by the Talbotts included additional rent on their former residence; rent for premises temporarily occupied pending the outcome of the specific performance action; costs of storing furniture, boarding pets and transporting a child to a new school in which he had been enrolled in anticipation of settlement.

The Court emphatically affirmed the rule that a court of equity has jurisdiction to decree compensation ancillary to a decree for specific performance, citing *Walzl v. King, supra;* Pomeroy, *op. cit. supra;* 81 C.J.S. Specific Performance § 162 (b) and the cases of *Greenstone v. Claretian Theological Seminary,* 343 P. 2d 161 (Cal. App. 1959) and *Butler v. Schilletter,* 96 S.E.2d 661 (S. C. 1957). With respect, however, to the "wide variety of expenses and losses"

---

8. The Chancellor had ruled that such compensation could not be awarded under a prayer for the general relief in the bill of complaint for specific performance.

allegedly suffered, the Court withheld any ruling, Judge Barnes stating (at 394):

> "*We are of the opinion that it is neither necessary nor feasible for us to rule at this time whether any particular item of damages is or is not recoverable in the equity suit.* The question, in part, and in the first instance, is a problem of proof. *We leave this question for solution to the chancellor* if he finds for the plaintiffs upon the remand of the case to the lower court." (Italics supplied.)

In the present case, Judge Raine's opinion, previously quoted in part, stated that, "Absent any other precedent the court follows the lead of Judge Weant [successor to Chief Judge Boylan] who decided *Miller v. Talbott, supra,* on remand."

We have examined Judge Weant's carefully prepared Opinion and Decree [9] and observe that he allowed a total of $442.50 for additional moving charges and storage of furniture and $900 for the boarding of plaintiffs' dogs in a kennel. He denied, however, a claim for rent paid by the plaintiffs for a residence which they leased when they were unable to move into the other property under the contract. In this connection the Chancellor relied upon 81 C.J.S. Specific Performance § 162 (b) at 770 for the proposition that, "Rent paid by the purchaser seeking specific performance, for other premises, after the vendor should have conveyed, may not be made the basis for recovery." *See also, Bumann v. Maurer,* 203 N.W.2d 434, 439-40 (N. D. 1972).[10]

Upon remand Judge Weant also allowed the sum of $120.00 upon a claim for interest on plaintiffs' deposit of $1,000 which had been paid at the time of execution of the contract. Appellee reads this portion of the decree as a

---

**9.** The Opinion and Decree was filed on March 2, 1966 in No. 10331 Equity, Circuit Court for Carroll County.

**10.** In the instant appeal, certain of the petitioners found it necessary to move in with relatives during the period of delay. Claims were originally made by some of them for inconvenience and discomfort and interference with marital relations but no claim for rent was interposed.

holding that, in the case of a residential dwelling, the value of any "loss of use" claim is measured solely by allowing interest on deposit or other monies paid prior to actual delivery and not by allowing the fair market net value of the property. We consider this an overbroad, impermissible interpretation. The appellants, on the other hand, assail Judge Weant's ruling insofar as it quoted the following language from 81 C.J.S. Specific Performance § 162 (d) (6) at 776 "Thus, where the purchase money has been paid and no rents or profits are recoverable by the purchaser, the purchaser is entitled to the interest on the amount paid as damages for being kept out of possession." Appellants insist that the general rule is that rents and profits *are* recoverable, citing *Worrall v. Munn*, 38 N. Y. 137, 141-7 (1868), 53 N. Y. 185, 188-9 (1893); and emphasize that they have claimed rents and profits here, rather than interest on their deposits.

The difficulty we find with appellants' position is that in *Worrall* and other cases upon which they rely in support of their claimed entitlement to "fair market net rental value," there were residential, agricultural or commercial properties in being and generating, or capable of generating, rents and/or profits; and, in other cases, only claims in tort or for breach of contract — not the equitable remedy of specific performance — were involved. Thus, in *Worrall* the defendant was indisputably liable for delay in conveying to plaintiff land which contained valuable sand and clay deposits suitable for brick-making. The Maryland case of *Evergreen Amusement Corporation v. Milstead*, 206 Md. 610, 112 A. 2d 901 (1955) involved a counterclaim in a *law* action for breach of contract where an amusement park owner sought damages for lost profits based on rental value of the property during the period of delay in clearing and grading the site for a drive-in movie theatre. In *Evergreen*, Judge Hammond (later Chief Judge) stated, "We think the court was right in basing the damages for delay in the completion of the site on fair rental value and the actual monetary losses incurred."

Similarily inapposite is *Brewer v. Sowers*, 118 Md. 681, 86

A. 228 (1912), a suit for specific performance of a contract for the sale of a 60-acre operating farm near Hagerstown in Washington County. The case involved no claim for delay in conveying the existing farm and farmhouse. The decree granting specific performance was affirmed but the Court found error, on the purchaser's cross-appeal, in the denial to him of interest on mortgage and other monies paid by him into court. Appellants here seize upon the Court's dictum in *Sowers* that the purchaser would have been entitled to the "rents and profits, or the fair rental value" from the date of settlement. While this dictum was indubitably a correct statement, its attempted application to the facts in the present appeal, involving unfinished single-family residential structures, is wide of the mark.

Equally misplaced is appellants' reliance upon the proceedings on remand in *Rocks v. Brosius*, 241 Md. 612, 217 A. 2d 531 (1966).[11] The Court of Appeals, again in an opinion by Judge Barnes, (the author of the opinion in *Miller v. Talbott*) affirmed a decree of specific performance of a lease agreement but remanded the case for further proceedings to determine compensation for the delay in the *completion of any home* and from the action of the vendor in clearing a temporary haul road (which Judge Barnes stated was "similar" to compensation for delay.) We are told that, on remand, Judge Ralph W. Powers denied many of the vendee's out-of-pocket claims as being remote or speculative. The vendor was required, however, to pay the real estate taxes on the property during the period of delay. In addition, the vendee was held entitled to the rental value (the sum of $600) of an *existing* tenant house on the property, there being evidence that it would have brought rent in the amount of $50 per month. The Court on remand made no award for delay in the completion of any homes.

Finally, we also find distinguishable the case of *Superior Construction Company v. Elmo*, 204 Md. 1, 104 A. 2d 581 (1954) which was not a suit for specific performance but rather for injunction and damages in trespass occasioned by

---

11. Proceedings on remand in the Circuit Court for Prince George's County were in Equity No. C-2613, August 19, 1968.

the building operations of the defendants on land contiguous to the petitioners' residences, which cast substantial deposits of debris, mud and silt upon the petitioners' land. The Court there held that complete satisfaction by way of damages should take into account "loss of personal enjoyment and use, independent of and beyond the difference in market value or costs of restoration." The *Elmo* case obviously involved damages in tort to compensate homeowners who were living in and enjoying the use of their homes until the defendants' building operations disrupted their use and enjoyment. We find no fair analogy between the rule of damages there applied and that which appellants seek in the instant case.

As the California District Court of Appeal stated in *Greenstone v. Claretian Theological Seminary*, cited by Judge Barnes in *Miller v. Talbott*, *supra*, the fundamental, conceptual approach in the award of compensation ancillary to specific performance is that a Court of Equity, once it obtains jurisdiction of an action for specific performance, should adjust the rights of the parties and endeavor to equalize losses occasioned by the delay. The Court there stated (at 165):

> "Confusion in this area has existed because of the informal use of the term 'damages' in connection with such an award, but it is settled that such compensation neither constitutes damages as contemplated in an action for breach of contract, nor implies legal damages."

In *Greenstone*, one of the terms of the contract was that "interest, taxes, rents and fire insurance are to be prorated to date deed is recorded." The property involved was a multi-family dwelling and rents indeed accrued during the period of the delay in the conveyance. In accordance with that provision, the opinion points out an accounting was rendered and the trial court allowed the plaintiff a credit of $34,011.20 on the purchase price in the final judgment from which appeal was taken. The Court stated (at 167):

> "No judgment for net rental value was awarded,

but on the contrary it was decreed 'that plaintiff is entitled to a credit against the purchase price of the real property described in said agreement for net rents received from said real property by the defendant Seminary from September 20, 1955 to September 15, 1958 in the sum of $34,011.20.' "

In this case, obviously no rents were generated. Neither was the appellee-developer in the position of reaping benefits as a result of his own admitted wrongdoing. There were no contractual provisions with respect to rents other than in terms of "public charges" to be apportioned at date of settlement and, indeed, several of the contracts involved contained provisions that should the seller cancel or default "for any reason all monies paid by buyers shall be returned by seller, with no further liability on the part of one to the other." Appellants were certainly and seriously discommoded by the delay in completion of their homes. For that they have been awarded compensation for their foreseeable expenditures. Specific performance was decreed and appellants now reside in their new homes. They are substantially in the position where they would have been had their contracts been timely performed. We cannot find that it was error for the Chancellor to deny them the additional compensation prayed.

The determination of whether to award ancillary compensation in equity is ultimately within the sound discretion of the Chancellor. In two actions for the specific performance of real estate contracts, decrees reflecting different results with respect to monetary awards were affirmed on the ground that the Chancellor had not abused his discretion.

In *Haffey v. Lynch*, 85 N. E. 817 (N. Y. 1908), the Court of Appeals observed that the trial court

"might, under the circumstances of this case, have relieved the [vendor] from liability for such rent. The question, however, was to some extent one of discretion, and we cannot say as a matter of law that the courts below erred in refusing to grant the

[vendor's] claim [that vendee was not entitled to the rental value of the property during the period of delay]." At 818.

In *Fleming v. O'Donohue*, 138 N. E. 183 (Ill. 1923), the Chancellor declined to award vendee rents and profits from a building with two apartments for the period of delay in making conveyance. The Court there stated:

"Such an order might doubtless have been permissible . . . but we consider that the allowance of such rents and profits . . . was largely within the sound discretion of the chancellor, and under all the circumstances in the case we are not disposed to disturb his finding in that regard." At 185.

We find here no abuse of discretion.

*Decree affirmed; appellants to pay the costs.*