Robert L. REIS and Barbara D. Reis, Appellants,

v.

George O. SPARKS, Jr., and Elizabeth H. Sparks, Appellees,

and

Mary S. Potter, d/b/a M. S. Potter Real Estate, Defendant.

Robert L. REIS and Barbara D. Reis, Appellees,

v.

George O. SPARKS, Jr., and Elizabeth H. Sparks, Appellants,

and

Mary S. Potter d/b/a M. S. Potter Real Estate, Defendant.

Nos. 75–2274, 75–2275.

United States Court of Appeals, Fourth Circuit.

Argued June 7, 1976.

Decided Oct. 21, 1976.

Robert H. Freilich (Robert F. Steeves, Washington, D. C., on brief), for appellants in No. 75–2274 and for appellees in No. 75–2275.

Sidney L. Bloom, for appellees in No. 75–2274 and for appellants in No. 75–2275.

Before BUTZNER, RUSSELL and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

This diversity case is an appeal and cross-appeal of summary judgment under Maryland law ordering specific performance and damages against the sellers of certain lands in Frederick County.

The case, which primarily concerns the legal effect of the buyers' intended exercise of an option to purchase lands, was before the district court on cross-motions for summary judgment. The district court found that the option had been exercised properly. It awarded the buyers specific performance of the remaining acreage of the sellers' farm and the amount of $3,950.63, a figure representing increased closing and mortgage costs resulting because sellers had refused to convey the lands. We affirm.

The sellers argue that the option was not exercised properly. The buyers cross-appeal, asking us to increase the amount of their money award from $3,950.63 to either $12,426.96 or $24,812.32.

The sellers, a Mr. and Mrs. Reis, gave to a local real estate agent, Potter, two listing agreements which together authorized the sale of the entire Reis farm with a commission of 10 percent to the agent. The listed purchase prices were $78,500 for 60 acres and all the buildings, and $125,000 for the entire 125 acres of the farm and all the buildings.

The buyers, George and Elizabeth Sparks, offered, in writing, to purchase the buildings and 70 acres of the land for $78,500, with a 5-year option to purchase the remaining acres of the farm for an additional consideration. The sellers made a counter offer which changed the purchase price for the 70 acres from $78,500 to $83,500, and the option price for the balance of the land from $31,500 to $45,000. The sellers' counter offer also changed the term of the option to run for two years from settlement on the first tract, followed by a three-year right of first refusal. Buyers accepted the counter offer, and settlement of the 70 acre tract and buildings was held on July 9, 1971. At that time, the parties executed a second contract under which the option to purchase the remaining acres was to survive the July 9 settlement and which also included the refusal for an additional three years.

Less than two years after settlement on the 70-acre tract, the buyers sent a letter dated April 23, 1971, containing the following passages, to the sellers and sent a copy to Potter, sellers' real estate agent:

"Pursuant to the contract of sale agreement entered into between yourselves as

sellers and my wife and me as buyers of your farm property located in Frederick County, Linganore District, State of Maryland, please be advised that it is our intention to exercise the option, included as part of said contract, to purchase the balance of the land, namely 55 acres, that constitutes part of the entire farm that you formerly owned.

*   *   *   *   *   *

"We can arrange settlement at your convenience within reason, however, I would assume that you would prefer to handle it as you did before and perhaps be represented at settlement by counsel."

Sellers did not respond to this letter. On June 29, 1973, the settlement attorney for buyers' lending institution, Dumler, notified the sellers' broker, Potter, by telephone that he was ready to schedule the settlement. On July 5, Dumler's partner, Whitney, sent a letter to the sellers which asked them to sign the prepared deed conveying the remaining part of the farm to the buyers, and also requested they sign an affidavit which stated that they had not received any gift or commission from the Sparks' lending institution. Whitney concluded his letter saying when the papers were returned, he would forward to them a check for the net proceeds of the sale and a memorandum of settlement.

Dumler held an ex parte settlement on July 6, 1973, at which time he collected the proceeds due the sellers. On July 23, Dumler sent a letter to the sellers saying he had held settlement on the remaining acreage and asking them to return the executed deed so that he could send them the check he was holding. Although his letter requested a response, the sellers never responded, as they had not to the earlier letter from the Sparks.[1] Instead, they instituted this suit in September, 1973 asking for declaratory judgment to establish the rights of the parties under the May 8 and July 9, 1971 contracts. The buyers counterclaimed requesting specific performance. The district court ordered specific performance and awarded ancillary compensation to the buyers for the extra expenses they incurred because the sellers refused to convey the property on July 6.

After oral argument and reviewing the record, the briefs, and the authorities cited, we are of opinion that the grant of specific performance was proper and that the sellers' arguments against it are without merit. We therefore affirm that part of the award for the reasons sufficiently stated by the district court in its opinions. Likewise, we find no error in the award of ancillary compensation to the buyers under Maryland law. Nor can we say that the amount of that award was in error. Therefore, we also affirm that grant for the reasons which follow.

The sum awarded in the district court was $3,950.63. It found this amount to be a fair accounting of the buyers' increased expenses in that they would be required to hold another settlement on the 55 acre tract and to obtain another mortgage after the delay of two years. At their first attempt to settle, on July 6, 1973, buyers had caused all the title work to be done and had acquired a mortgage loan commitment in the amount of $33,000 for 20 years at 7½ percent interest. The loan was to be secured by a first mortgage on the additional 55 acres and a second mortgage on the 70 acres and buildings previously purchased from the Reises. But, by the time the case came before the district court, an intervening change in the Maryland usury law made a mortgage unavailable at the same interest. The district judge granted the buyers additional interest charges, fixing them at an amount "calculated on a $33,000 mortgage with an increase in interest from 7½ percent to 9½ percent for a period of 20 years, discounted at a rate of 5 percent to get the current value." The parties stipu-

---

1. Our opinion is not based on no immediate response to Whitney's letter of July 5, the time being too short for a reply before the closing. The record is clear that the Reises never intended to convey the property at any time after they were notified in April of the exercise of the option.

lated to additional settlement charges of $175.

Sellers base their argument against the award on the English rule of *Hadley v. Baxendale*, 9 Exch. 341, 5 Eng.Rul.Cas. 502 (1854), as stated in Maryland in *St. Paul at Chase Corp. v. Manufacturer's Life Ins. Co.*, 262 Md. 192, 278 A.2d 12, 35 (1971). In an action for breach of contract that rule awards an amount

" . . . as may fairly and reasonably be considered as either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of a breach of it." 278 A.2d at 35.

The sellers take the position that they could not have known that a refusal to convey would result in increased mortgage costs to the buyers because the contract did not indicate that the 55-acre tract was to be financed. And it is true that, although the contract provided for financing the 70-acre tract, it was silent about financing the 55-acre tract. So, the sellers argue, the extra expense of financing was not foreseeable at the time the contract was entered into and is not a proper item of damages under the rule of *Hadley v. Baxendale*.

■ But we think that rule is inapposite here. This case is not one for breach of the contract, but for specific performance of it. In *Bernardini v. Stefanowicz*, 29 Md.App. 508, 349 A.2d 287 (1976), the Maryland Court of Special Appeals, in upholding an award of compensation ancillary to specific performance, explained that such is not the same as an award of legal damages for breach of contract. Instead, the contract remains in force and the court attempts to require its performance as nearly as possible in accordance with its terms:

"One of the terms is the date fixed by it for completion, and since that date is past, the court, in order to relate the performance back to it, gives the complainant credit for any losses occasioned by the delay and permits the defendant

to offset such amounts as may be appropriate. *The result is more like an accounting between the parties than like an assessment of damages.*" 349 A.2d at 291 (quoting *Ellis v. Mihelis*, 60 Cal.2d 206, 219, 32 Cal.Rptr. 415, 423, 384 P.2d 7, 15 (1963)). (Emphasis by the Maryland court).

■ Thus, the *Hadley v. Baxendale* rule should not be applied when the standard, as here, is not for computing legal damages, but is for making the injured party whole.

■ Apparently, no Maryland case holds specifically that increase in mortgage interest is a proper item for compensating the injured party for the delay in conveying property. But, in view of the fact that the sellers were advised of the buyers' plans to finance the purchase, and the fact that the sellers adamantly refused to make the conveyance after having such knowledge, we do not believe the Maryland courts would consider such an award to be an abuse of discretion as defined in Maryland.

This brings us to the remaining question, raised by the cross-appeal, and by implication in the direct appeal, which is whether the district judge properly based his award of compensation on a 20-year contract, finding, as he did, that the sellers should not bear the entire cost of the delay because the delay was in part self-imposed by the buyers after the suit started.

■■ Under *Bernardini*, the determination of whether to award ancillary compensation in equity is "ultimately within the sound discretion of the Chancellor." 349 A.2d at 294. The two cases relied upon in *Bernardini* to illustrate the breadth of the Chancellor's discretion are enlightening. In the first, *Haffey v. Lynch*, 193 N.Y. 67, 85 N.E. 817 (1908), the trial court, which had awarded rents not received as ancillary compensation, was affirmed in granting specific performance plus the ancillary relief requested. The appellate court specifically refused to disturb the lower court's finding, although it recited the trial court would have been justified in making no such ancillary award. In the second case, *Fleming v. O'Donohue*, 306 Ill. 595, 138 N.E.

183 (1923), the trial court was also affirmed. It refused to grant rent as ancillary relief in addition to specific performance in circumstances more favorable to the plaintiff than in *Haffey*. It seems, therefore, that the Maryland courts vest wide discretion in the Chancellor to determine the amount of an ancillary award. In our opinion, it is largely within the discretion of the Chancellor which items to grant and which not to grant in arriving at an equitable settlement. Indeed, it is within his discretion to give no compensation at all. The standard in Maryland for reversal is abuse of discretion. *Bernardini*, 349 A.2d at 295.

The buyers would have us reverse the lower court's decision on the ancillary award, claiming it should have counted all the time delay as well as the difference in the terms of years of the loans in arriving at the award. But, like the sellers, they base their argument on legal damage theories, inapposite here.[2] Neither the buyers nor the sellers have convinced us the award was an abuse of discretion.

Finally, sellers argue they are entitled to interest on the purchase price from the date of attempted settlement, because the money was not paid into court but was held by the settlement attorney. Such request, if raised in the district court, was within the discretion of that court to award or to deny. In any event, we do not find error in its denial because sellers remained in possession of the property and could have had the purchase money at any time by fulfilling their legal obligation to convey the property. " . . . [T]hey have no one to blame but themselves for not getting the purchase money sooner." *Brewer v. Sowers*, 118 Md. 681, 684, 86 A. 228, 231 (1912).

The parties submitted the case on cross motions for summary judgment. The material facts were established by admission and stipulation. Nevertheless, sellers now seem to say there is some question as to whether the motions were to dispose of the entire case or only to dispose of certain counts of the complaint. We find the mo-

tions pertain to the entire case. Certainly the buyers' motion for summary judgment was not limited, and upon that motion the court had adequate reason to make its holdings in which the buyers substantially prevailed. Nothing in the record indicates otherwise, and the district court recited in its opinion that the sellers had assured it that all material facts were before the court.

We have considered the sellers' other assignments of error and are of opinion they are without merit.

The judgment of the district court being without error, it is accordingly

*AFFIRMED.*

---

**2.** Alternately, the buyers do submit abuse of discretion is the proper standard.