David Kim BEVAN, et al., Plaintiffs
and Respondents,

v.

J.H. CONSTRUCTION CO., INC., Robert
H. Graham, and Jack Hale, Defendants
and Appellants.

No. 18078.

Supreme Court of Utah.

Aug. 23, 1983.

---

assume that the proceedings at trial were regular and proper and that the judgment was supported by competent and sufficient evidence.[1] As a necessary consequence, the only issue presented for determination bears upon the propriety of the award of damages measured by the difference in the increase in mortgage interest rates and the method used in the calculation thereof.

Although the issue of liability has been resolved, a factual synopsis is necessary in order to address the damage issue. The following facts are gleaned from the findings made by the trial court, which appear in the court's file, the only record before us.

Defendants agreed to construct a house for plaintiffs in Kearns. The contract price was established at $42,000 and construction was to be completed by September 9, 1979. Plaintiffs obtained a construction loan of $33,600 from Valley Mortgage and gave defendants permission "to withdraw funds from [the] undisbursed account." The difference between the $33,600 and the $42,000 purchase price was to be paid in cash and/or labor.[2] The house was completed on time, but plaintiffs could not close on a loan because various materialmen's liens were outstanding. Defendants had apparently used some of the $33,600 on other projects. In November, 1980, the house was sold to a secured party (Style Realty) at a trustee's sale. Plaintiffs then purchased the house from Style Realty, with Valley Mortgage providing the financing at 13 percent interest. Had the purchase gone through as contracted on September 9, 1979, the financing would have been 10 percent.

The trial court's findings as they relate to the damage question read as follows:

8. The court finds that the delay in the plaintiffs' purchase of their home was due solely to the breach of the contractual duties owed plaintiffs by Graham, Hale and J.H. J.H. lost its contracting license early in the construction of the home on

C. Glenn Robertson, Sandy, for defendants and appellants.

Samuel King, Salt Lake City, for plaintiffs and respondents.

HALL, Chief Justice:

Defendants appeal the money judgment entered against them for breach of contract to construct a house. This Court denied plaintiffs' motion to dismiss on procedural grounds, but summarily affirmed the judgment of the trial court on the issue of liability because the trial transcript was not designated as a part of the record on appeal. In the absence of a transcript, we

1. *Estate of Thorley,* Utah, 579 P.2d 927 (1978); *Bagnall v. Suburbia Land Co.,* Utah, 579 P.2d 917 (1978); *Sawyers v. Sawyers,* Utah, 558 P.2d 607 (1976).

2. Plaintiff David Kim Bevan was a former employee of defendants' and expected to provide much of the labor.

May 9, 1979, but Graham and Hale continued to finish the home even though none of the three had valid contractor's licenses. This supports the Court's finding of their individual liability in addition to that of the corporation. As a result of the delay in closing, the court finds the plaintiffs suffered damages in the sum of $48,700 cost and interest differential for which defendants are liable. Plaintiffs should be given judgment for that sum *discounted at 5½% over 30 years to its present value. To determine the present value, a sinking fund approach will have to be taken.* Each month, plaintiffs pay out of hand $135.28 more than they would have paid had the original contract been timely performed. *$9,771.36 now deposited at 5½% and compounded annually would total the $48,700 in 30 years. However, as plaintiffs cannot let this money sit in the bank for 30 years, but must pay it out at the rate of $135.28 per month,* which would entirely deplete the $9,771.36 in 8 years, the court finds that $23,825.75 is appropriate. This sum deposited at 5½% interest compounded annually will allow for a draw each month of $135.28 and will be at a zero balance in 30 years. [Emphasis added.]

The rationale for the trial court's decision is found in its conclusions of law, which read in pertinent part as follows:

While this appears to be a case of first impression in Utah, the court is persuaded by the rationale of cases such as *Godwin v. Lindbert,* [101 Mich.App. 754] 300 N.W.2d 514 (1980), and *Reis v. Sparks,* 547 F.2d 236 (1976, CA 4, Md.), which find general support in *Wagner v. Anderson,* 122 U. 402 [403], 240 [250] P.2d 577, that where buyers are delayed in closing on a home due solely to seller's breach of contract, and changing interest rates are known to be a factor in total cost to buyers, that sellers can be in a proper case responsible for that loss. This is such a case.

\*    \*    \*    \*    \*    \*

A perusal of the foregoing cases reveals solid support for the conclusion reached by the trial court that the loss of a favorable mortgage interest rate is a legitimate item of compensable damage. Both *Godwin v. Lindbert* and *Reis v. Sparks, supra,* expressly stand for that proposition and it is wholly consistent with the general rule of damages which arms the trial court with the discretion to place the litigants as nearly as possible in the position they would have enjoyed had the contract not been breached.[3] Furthermore, the subject damages arose fairly and reasonably from the breach of contract, and they may reasonably be supposed to have been within the contemplation of the parties at the time they made the contract,[4] and when adequately proven, said damages clearly fall within the purview of this Court's decision in *Wagner v. Anderson, supra,* wherein it was stated:

Assuming that the respondent's refusal to perform on time was wrongful, there arose in favor of the appellants a cause of action for specific performance *and also any special damages occasioned by the delay which the appellants can prove.* [Emphasis added.]

Defendants contend that the trial court erred in utilizing a sinking fund method of calculating damages rather than discounting the 30-year interest differential to present value as was done in *Godwin* and *Reis.* However, in rejecting that contention, the trial court appropriately observed that the facts of this case presented a factual nuance not present in either *Godwin* or *Reis,* namely, that plaintiffs had an ongoing obligation to pay the sum of $135.28 per month more than they would have had to pay had the contract been timely performed. Over the period of the 30-year mortgage, plaintiffs would thus suffer interest differential damage in the amount of $48,700.

As urged by defendants, a damage award of $9,771.36, if permanently placed on de-

---

**3.**   See 22 Am.Jur.2d Damages § 12.

**4.**   *Hadley v. Baxendale,* 9 Exch. 341, 5 Eng.Rul. Cas. 502 (1854).

posit bearing interest at 5½ percent [5] compounded over 30 years, would afford plaintiffs the total interest differential of $48,700. However, if plaintiffs are to be made whole, they should not be obliged to leave the money on deposit. Rather, they would be entitled to expend it at the rate of $135.28 per month, but should they do so, the entire sum would be depleted within an 8-year period.

The apparent inequity of simply discounting the interest differential figure of $48,700 to its present value prompted the trial court to adopt a sinking fund formula as a means of assuring just compensation to the plaintiffs.

Under the facts of this case, the propriety of the sinking fund formula is borne out by the fact that by utilizing a damage award of $23,825.75 and placing it in a sinking fund bearing interest at the rate of 5½ percent compounded annually, it would accommodate the withdrawal of the required monthly excess interest payment of $135.28 and would reflect a zero balance at the end of the 30-year mortgage.

■ We find no abuse of discretion on the part of the trial court in its award of damages, nor in its calculation of the measure thereof. Accordingly, its judgment is affirmed. Costs to plaintiffs.

OAKS and DURHAM, JJ., and PETER F. LEARY, District Judge, concur.

STEWART, Justice, dissenting:

I dissent because I think the damage award of over $23,000 is highly speculative, based on a formula that is inappropriate, and, in all events, will provide the plaintiff with a windfall of more than double his legitimate damages.[1]

Defendants agreed to construct a home for plaintiffs in Kearns. The purchase price was set at $42,000 and construction was to be completed by September 9, 1979. Plaintiffs obtained a $33,600 construction loan from Valley Mortgage and gave defendant permission "to withdraw funds from [the] undisbursed account." The difference between the $33,600 and the $42,000 purchase price was to be paid in cash and/or labor. The home was completed on time, but plaintiffs could not close a loan because various materialmen's liens were outstanding. Defendants had apparently used some of the $33,600 on other projects. In November, 1980, the home was sold to a secured party (Style Realty) at a trustee's sale. Plaintiffs then purchased the home from Style Realty, with Valley Mortgage providing the financing at 13% interest. If the purchase had gone through as contracted on September 9, 1979, the financing would have been 10%. The trial court found that over the 30-year term of the loan, the difference in interest rates would result in an increased cost to plaintiffs of $48,700, or $135.28 per month. Using a sinking fund model, the court held that a lump sum damage award of $23,825.75 invested at 5½% interest (compounded annually) "will allow for a draw each month of $135.28 and will be at a zero balance in 30 years." Appellant apparently does not dispute the use of this model.[2]

In sustaining the damage award, the majority makes two speculative assumptions. The first is that the plaintiff-buyers will pay off the entire 30-year mortgage at a 13 percent interest rate. That assumption ignores the probability that interest rates would subsequently fall and that plaintiffs will no doubt subsequently be able to refinance at a lower rate of interest. That assumption also wholly ignores the likelihood that the buyers will sell the home, and the new buyers will be able to obtain a new loan at a lower rate.

---

5. No issue is presented on appeal as to the propriety of a 5½ percent discount rate.

1. This is a pro se appeal.

2. Appellant's "argument" in its brief consists of one sentence: "Appellant attaches hereto as exhibits the correct tables to compute the present value of 48,700.00 dollars, at 5.5% interest over 30 years, as ordered by the trial court." In my view, the error in the computation of damages constitutes manifest error and should be addressed even though not raised on appeal.

Most mortgages are not held for their full term. "Residential real property typically is held for only seven to ten years." *Stratton v. Tejani,* 139 Cal.App.3d 204, 187 Cal. Rptr. 231, 238 (1982), *citing* 1 Miller & Starr, *Current Law of California Real Estate,* § 5:18 at 54 (1982 Supp.).

The second speculative assumption is the trial court's theory that plaintiffs will put the damage award in a sinking fund at a 5½% rate of return. That rate of return is, I submit, unrealistic. Plaintiffs could safely invest their damage award of $23,825 at double the rate of return assumed in the damage calculation. For example, plaintiffs could have bought long-term government bonds [3] selling at or near par with a coupon rate in excess of 10% in November, 1980. Even if plaintiffs obtain only a 10% rate of return on the damage award, they will earn more than $2,300 per year from the interest coupons. That would more than pay the increase on the mortgage payments, which total only $1,623.36 per year ($135.28 × 12 = $1,623.36), and leave an annual windfall of some $670. Thus, at the end of the 30-year amortization period, plaintiffs would receive a total of $20,100 interest more than is necessary to cover their own increased interest costs plus the principle amount of $23,825.75, or a grand total (not including interest of the excess interest income) of $43,925 beyond what is necessary to pay the legitimate damage amount.

Damages for breach of contract should be compensatory only and may not be based on mere speculation or conjecture. *Robinson v. Hreinson,* 17 Utah 2d 261, 409 P.2d 121 (1965). *Accord Bastian v. King,* Utah, 661 P.2d 953 (1983); *Dunn v. McKay, Burton, McMurray & Thurman,* Utah, 584 P.2d 894 (1978); *Monter v. Kratzers Specialty Bread Co.,* 29 Utah 2d 18, 504 P.2d 40 (1972).

The majority rejects the damage theories used by other courts under similar circumstances. Where a plaintiff has been awarded damages for an increase in mortgage interest payments caused by defendant's breach of contract, the damage award is almost always the present value of the increase in mortgage payments. *See Hutton v. Gliksberg,* 128 Cal.App.3d 240, 180 Cal. Rptr. 141 (1982); *Godwin v. Lindbert,* 101 Mich.App. 754, 300 N.W.2d 514 (1980) (per curiam); *Reis v. Sparks,* 547 F.2d 236 (4th Cir.1976).[4] *But see Foust v. Hanson,* Tex. Civ.App., 612 S.W.2d 251 (1981) (present value approach not employed).

The majority asserts that *Godwin, supra,* and *Reis, supra,* are distinguishable, but I see no basis for the distinction. In those cases, as in this case, the buyers were obligated to make increased mortgage payments because of seller's delay. That the buyer was also granted a decree of specific performance is wholly irrelevant.

Although a damage award based on a present value theory would be less than the amount necessary for a "sinking fund" sufficient to pay damages for a theoretical 30-year period at 5½%, a present value award would provide reasonable damages. This approach, although perhaps not ideal,[5] at least avoids a guaranteed double recovery.

In any event, no damage award should be made at all in the absence of some evidence

---

**3.** This figure is not in the record but I think it not inappropriate to take judicial notice of a fact relating to United States government bonds that appears in the Wall Street Journal.

**4.** In a number of cases, the issue of damages was decided in favor of the plaintiff-buyer, but the exact amount of damages was not determined, or the basis for the amount is unclear. *See Stratton v. Tejani,* 139 Cal.App.3d 204, 187 Cal.Rptr. 231 (1982); *Cal-Val Construction Co. v. Mazur,* 636 S.W.2d 391 (Mo.App.1982); *Walker v. Benton,* Fla.App., 407 So.2d 305 (1981); *Home America, Inc. v. Atkinson,* 392 So.2d 268 (Fla.App.1980); *Regan v. Lanze,* 47 A.D.2d 378, 366 N.Y.S.2d 512 (1975), rev'd on other grounds, 40 N.Y.2d 475, 387 N.Y.S.2d 79, 354 N.E.2d 818 (1976). *But see Donovan v. Bachstadt,* 91 N.J. 434, 453 A.2d 160 (1982) (damage issue decided against plaintiff-buyer).

**5.** For an alternative approach to the problem, see *Stratton v. Tejani,* 139 Cal.App.3d 204, 187 Cal.Rptr. 231 (App.1982).

bearing on the length of time that defendants are likely to remain in the home. A number of factors can be considered which would increase the likelihood of moving before the mortgage term is up. Defendant may, for example, have an occupation which will require him to move. Surely a soldier, or a salesman for a national corporation such as IBM, or a young physician is not likely to remain in the home for thirty years. The plaintiff had the burden of proof on the issue. Without a finding on that point, I think no award should be made at all.

HOWE, J., having disqualified himself, does not participate herein.

PETER F. LEARY, District Judge, sat.