620 A.2d 975

**MONTGOMERY VILLAGE ASSOCIATES, et al.**

v.

**Michael L. MARK, et ux.**

**No. 1059, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

March 1, 1993.

Certiorari Denied June 8, 1993.

338

---

John P. Markovs and Christopher C. Nolan (Philip C. Sessoms, Jr., Adams, Portor & Radigan, Ltd., McLean, VA, Joseph J. D'Erasmo, and D'Erasmo, Shure & Perez, Rockville, on the brief), for appellants.

Michael P. Tanczyn, Towson, for appellees.

Argued before BISHOP, BLOOM and FISCHER, JJ.

FISCHER, Judge.

This case involves the alleged failure to perform under the terms of a repurchase agreement for a condominium unit. Lois Mark and Michael L. Mark, appellees, filed suit in the Circuit Court for Montgomery County against appellants Montgomery Village Associates (MVA) and O & Y Landmark Associates (O & Y) for specific performance of the agreement and for damages stemming from appellants' failure to perform in a timely fashion.[1] The parties filed cross-motions for summary judgment, and after a hearing, the court denied MVA's motion for summary judgment, granted the Marks' motion "as to the repurchase," ordered MVA to "comply with the repurchase forthwith," and scheduled a future hearing on the Marks' claim for damages.

The repurchase had not occurred by the date of the damages hearing, and the court entered judgment in the amount of $107,003.22 against the appellants. Thereafter, the appellants filed a motion to alter or amend the judgment. During the pendency of the motion, MVA purchased the condominium, and as a result of the repurchase, the Marks afforded appellants a credit of $73,152.91 against the judgment. Several months after the repurchase, the court denied appellants' motion to alter or amend.

On appeal, O & Y and MVA ask us to decide:

1. Whether the trial court erred in its July 31, 1991 order by awarding damages against O & Y ... for failure to perform on a Repurchase Agreement to which O & Y ... [was] never [a] part[y].

2. Whether the trial court erred in its July 31, 1991 order by improperly including items of damages which should not have been assessed against any defendant, and

---

**1.** Also named as defendants were American Landmark Equity Corporation and Dominion Federal Savings and Loan Association. (Dominion subsequently became known as Trustbank Savings, F.S.B.) The claims against American and Dominion have been settled, and these institutions are not parties to this appeal.

by awarding damages which were unsupported in fact and not legally recoverable under Maryland law.

At the time the Marks purchased the condominium unit, identified as 18612 Walkers Choice Road # 5, Gaithersburg, the property was subject to a Deed of Trust held by Dominion Federal. The principal due on the note was then $52,992.23. Its terms called for monthly interest payments with the final balloon payment due on or about November 1, 1988. The Marks agreed to assume the note, and at closing on August 30, 1984, they executed a Second Deed of Trust on the property. The Second Deed of Trust, held by M.T.G.E. Corporation, obligated the Marks to make one balloon payment of principal and interest in the amount of $16,520.13 due on November 1, 1988.

MVA and the Marks also executed a "Guaranteed Repurchase Addendum to [the] Purchase Agreement." The Repurchase Addendum provided that, upon written notice, MVA would repurchase the condominium for the greater of "(1) the purchase price of the Property that was paid by [the Marks]; or (2) the then current principal balance of the First Deed of Trust Note plus the then current principal balance of, plus accrued interest on, the Second Deed of Trust Note." The Repurchase Addendum required the Marks to keep current the payments on the first and second deeds of trust. By virtue of another addendum (addendum No. 7), the Marks and MVA agreed:

> In the last month during the maturity of the existing first trust note [November, 1988], purchaser [the Marks] shall have the right to require Seller [MVA] to repurchase the property by giving proper notice.

On July 13, 1988, the Marks wrote to MVA in order to exercise their right to have MVA repurchase the condominium. Despite the terms stated in the Repurchase Addendum and in addendum No. 7, the repurchase was not completed by November, 1988. Although the Dominion loan had matured, the Marks did not pay the balance, but, instead, continued to make monthly payments through January, 1989. After January, 1989, Dominion ceased accepting the

monthly payments and subsequently initiated foreclosure proceedings. On June 4, 1989, Mr. Mark filed a Chapter 13 bankruptcy petition. After filing the bankruptcy petition, the Marks commenced this action.

As alleged in the complaint, the Marks' theory of recovery against O & Y was that O & Y, as general partner of MVA, had received an assignment of MVA's rights under the repurchase agreement. O & Y admitted that it was a general partner of MVA but denied that an assignment had occurred. O & Y also stated in its answer that it had "no obligation to [the Marks] to perform under the terms and conditions of the documents constituting the repurchase agreement." No further mention of O & Y's status was made in the cross-motions for summary judgment, the answers thereto, or the supporting affidavits.

After conducting a hearing on the issue of damages, the court, on July 31, 1991, entered judgment in the amount of $107,003.22 against the appellants. On August 12, 1991, the appellants filed a motion to alter or amend.[2] In their motion, the appellants argued that O & Y was not liable for damages arising under the repurchase agreement and that, in calculating the amount of damages, the court awarded monies for which there existed no legal basis.

Despite appellants' request for a hearing, the court denied the motion to alter or amend without receiving oral argument from the parties. Although the court had earlier conducted a hearing on the summary judgment motion and on the damages issue, we are without the benefit of transcripts because it appears that those proceedings were not recorded. We confine our review, therefore, to the documents in the record.

■ The appellants now contend that the court erred in assessing damages against O & Y, as O & Y was not a

---

2. The ten-day time limit for filing a Rule 2–534 motion to alter or amend expired on a weekend. By operation of Rule 1–203, the appellants were afforded until the next business day, in this case August 12, 1991, to file their motion.

party to the repurchase agreement. O & Y had admitted, however, that it was a general partner of MVA. "Under partnership law, general partners are jointly liable for the contractual debts and obligations of the partnership ... and, ordinarily agreements among partners (other than in a limited partnership) to limit their liability are not binding on third parties dealing with the partnership...." *Dominion Nat. Bk. v. Sundowner Jt. V.*, 50 Md.App. 145, 160, 436 A.2d 501 (1981), *cert. denied,* 292 Md. 597 (1982) (citations omitted). In the absence of a transcript of the proceedings below, there exists no basis to excuse O & Y from its partnership liability. Accordingly, we find that the court properly assessed damages against both MVA and O & Y.

In addition to the amount owed on the Dominion note, the Marks also sought to recover the costs associated with filing bankruptcy, counsel fees, and damages for loss of credit reputation. The court awarded a total of $107,003.22 to the Marks. When the repurchase was eventually consummated, the Marks in turn afforded a credit of $73,152.91 to the appellants for the amount of the Dominion note.

█ The appellants now claim that the remaining damages of $33,850.31 were unsupported in fact and are not legally recoverable under Maryland law. The Marks respond that they were, in effect, forced into bankruptcy because, "Under the terms of the Repurchase Agreement the Marks could not demand specific performance by the Defendants of the repurchase if Plaintiffs altered the terms of the Note, prepaid it, or sold the property to others."

In *Bernardini v. Stefanowicz Corp.*, 29 Md.App. 508, 515, 349 A.2d 287 (1975), *cert. denied,* 277 Md. 735 (1976) (quoting *Ellis v. Mihelis,* 60 Cal.2d 206, 32 Cal.Rptr. 415, 384 P.2d 7 (1963)), we stated:

'The compensation awarded as incident to a decree for specific performance is not for breach of contract and is therefore not legal damages. ... The result is more like

an accounting between the parties than like an assessment of damages.'

We added that:

[T]he fundamental conceptual approach in the award of compensation ancillary to specific performance is that a Court of Equity, once it obtains jurisdiction of an action for specific performance, should adjust the rights of the parties and endeavor to equalize losses occasioned by the delay.

*Bernardini,* 29 Md.App. at 519, 349 A.2d 287. Moreover, in such cases, "The determination of whether to award ancillary compensation in equity is ultimately within the sound discretion of the Chancellor." *Bernardini,* 29 Md.App. at 520, 349 A.2d 287.

Currently at issue are three components of the Marks' request for damages: costs associated with the bankruptcy proceeding, compensation for loss of credit reputation, and attorneys' fees. The Marks argue that, in order to stay the foreclosure proceedings commenced by Dominion and to preserve the right to demand specific performance under the repurchase agreement, they had no choice but to file for bankruptcy protection. Under the circumstances of this case, we know of no means other than the filing of bankruptcy for the Marks to have preserved their right to demand specific performance. Although, technically, the filing of a petition under Chapter 13 was voluntary, it was the only avenue that would enable the Marks to seek the relief to which they were entitled—specific performance. Within the facts of this case, the filing of the bankruptcy petition was certainly reasonable and foreseeable, and the costs associated with that proceeding are, therefore, recoverable by the Marks.

■ As a consequence of the bankruptcy action, the Marks contend that their reputation for credit trustworthiness was tainted. In a memorandum submitted to the circuit court, the Marks detailed specific instances of the denial of credit. We believe this loss was the direct result

of the delay in performance of the repurchase agreement, and we perceive no error in the award of damages by the circuit court.

■■■■ With regard to the Marks request for counsel fees, generally such fees are not recoverable "ancillary monetary damages" in a specific performance suit. *Archway Motors v. Herman*, 41 Md.App. 40, 44, 394 A.2d 1228 (1978), *cert. denied*, 284 Md. 741 (1979). An exception to this rule exists, however, "where the wrongful acts of the defendant has involved the plaintiff in litigation with others, or placed him in such relation with others as make it necessary to incur expense to protect his interest...." *McGaw v. Acker, Merrall & Condit Co.*, 111 Md. 153, 160, 73 A. 731 (1909). So, too, on this point do we find that the fees incurred by the Marks were the result of the appellants' wrongful acts and were properly awarded as damages.

■■■■ Appellees moved to dismiss this appeal for reason that neither a transcript of the proceedings below nor an agreed statement of the case was filed by appellants. Appellants, in turn, point out that no record was made of the hearing in the circuit court and appellees refused to agree to a joint statement of the case. In light of these circumstances, we deny the motion to dismiss.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.