MILLER, et ux. *v.* TALBOTT, et ux.

TALBOTT, et ux. *v.* MILLER, et ux.

[No. 323, September Term, 1964.]

*Decided June 30, 1965.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, OPPENHEIMER and BARNES, JJ.

*Eugene G. Ricks* for appellants.

*Leonard S. Jacobson,* with whom was *Preston A. Pairo, Jr.* on the brief, for appellees.

BARNES, J., delivered the opinion of the Court.

On December 3, 1963 the Talbotts, appellees and cross-appellants, filed suit in the Circuit Court for Carroll County against the Millers, appellants and cross-appellees, for specific performance of a contract for the sale of the Millers' country residence known as Foxhill, in Carroll County, Maryland. The Millers have appealed from the final decree of specific performance dated August 29, 1964. The Talbotts have appealed from that decree insofar as it denies to them money damages (in addition to specific relief) for certain losses and expenses allegedly caused by the failure of the Millers to convey their property on the date called for in the parties' contract.

The Talbotts' bill of complaint was filed on December 3, 1963; attached to it was an order directing the defendants to show cause on or before December 27, 1963 why the relief prayed in the bill should not be granted. The Millers answered the show cause order on December 23, 1963, and the bill of complaint, on January 23, 1964. The defendants assigned as reasons for their failure to convey the land in question that there was no legally binding contract between the parties; that the defendants had not refused to comply with the terms of "the alleged original contract"; that the description of the property in the contract was inadequate; and that the written contract was not the complete agreement of the parties, because of subsequent alterations and other "verbal arrangements."

On January 11, 1964 the plaintiffs filed interrogatories inquiring into the factual basis for each of the defenses asserted

in the defendants' answers. The interrogatories were not answered within the time allowed by the Maryland Rules of Procedure; and on March 17, 1964 plaintiffs moved for a decree *pro confesso* against the defendants. The court did not grant the motion as such, but, instead, ordered the defendants to show cause before April 3, 1964 why such a decree should not be entered against them. The defendants filed no reply, and on April 21, 1964, a decree *pro confesso* was entered, and the case set down for hearing "to determine to what relief the plaintiffs are entitled."

Preceding the hearing of May 15, 1964 defendants retained new counsel, Lewis F. Fleury; on May 15th this counsel filed "Answers to Interrogatories of Plaintiffs" and a "Motion to Set Aside Decree Pro Confesso." In these papers the defendants asserted: 1) that William C. Miller was mentally incapable of making a contract at the time of the alleged agreement (thereby making that agreement a nullity), and 2) that the time for performance of the contract was orally extended, by Mrs. Talbott, from November, 1963 to January, 1964 (thereby making the suit brought on December 3, 1963 premature).

At the hearing held on May 15th defendants' counsel asked leave "to file answers to interrogatories which have been in default and which are now answered"; he stated: "* * * I have set forth in my motion the reason for not having answered the interrogatories prior to this time. I would like to file those at this time, if I may." The court replied: "You may file them." Counsel then offered to prove that the defenses (set out above) were meritorious. He produced letters from two physicians as to Mr. Miller's mental condition at the time of the execution of the written contract; and stated that "I will present and intend to present medical testimony of his incompetency." Continuing, he said:

> "He (Miller) had been hospitalized shortly before this contract was signed for a mental condition, but at the time it was signed he threatened to take his own life if he was not able to get away from this place. His mental condition is a very, very poor one. All of which we can prove at the time of the hearing on the merits of this matter."

Mr. Fleury also requested the court to consider the fact that the failure to respond to interrogatories was not because of lack of diligence by Mr. and Mrs. Miller but rather "perhaps, of laxity of counsel." (We were informed at the argument that the Millers' prior counsel had been completely absorbed during this period with his active campaign for a seat in the U. S. House of Representatives.)

At the conclusion of argument of counsel, the following colloquy ensued:

> "The court: Well, in this case the court will be required to set aside the motion (sic) to set aside the decree and will leave the decree stand.
>
> Mr. Pairo: Does your honor wish us to proceed on our damages?
>
> The court: Yes, proceed."

Thereupon, four witnesses were called; they included Mr. and Mrs. Talbott, Mrs. Miller, and a Mr. Myron Almony. A fair reading of the record convinces us that all of this testimony relates solely to the issue of the plaintiffs' damages (discussed *infra*) and that the merit or lack of merit of either of the defendants' defenses was not at issue, in view of the court's ruling quoted above.

We will treat the issue before us in three parts, for convenience, as we did in *Guerriero v. Friendly Finance Corporation*, 230 Md. 217, 186 A. 2d 881 (1962): 1) Did the lower court abuse its discretion in entering a decree *pro confesso* against the defendants because of their failure to answer plaintiffs' interrogatories within the time allowed by the Maryland Rules? 2) Did the court abuse its discretion in extending the decree *pro confesso* into a final decree for specific performance in view of the matters of defense proffered by the defendants? 3) Did the court err in subsequently refusing to vacate that decree?

I

Turning to question No. 1, we have already traced the history of this suit from inception to final decree. Under our Rules the trial court has considerable latitude in dealing with a failure to respond to interrogatories; Maryland Rule 417 d provides:

"If, after proper service of interrogatories upon a party, he fails to serve answers to them within the time allowed, the court on motion and notice may strike out all or any part of any pleading of that party, or dismiss the action or any part thereof, or enter a judgment by default or decree *pro confesso* against that party."

Instead of taking action under that Rule, the trial court may issue an order directing the defendant to answer. *Baltimore Transit Company v. Mezzanotti,* 227 Md. 8, 174 A. 2d 768 (1961). In the latter event a failure to comply will bring the sanctions of Rule 422 into play; to paraphrase, these include a) an order taking the matters inquired into as established in accordance with the claims of the inquiring party; b) an order prohibiting the "disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing in evidence designated documents or things or items of testimony * * *"; c) an order striking out pleadings or staying the proceedings until interrogatories are answered, or dismissing the action, or rendering a default judgment or decree *pro confesso;* d) an order adjudging the disobedient party in contempt and prescribing the punishment therefor.

Under either Rule the court, in its discretion, may enter a decree *pro confesso* against the defaulting party (though it is not compelled to do so, *Guerriero v. Friendly Finance Corporation, supra,* at page 221 of 230 Md.). Entry of a decree by the court *sua sponte* may even be permissible in a proper case (*Guerriero,* at 220). Under the circumstances here, where defendants or counsel for the defendants had every opportunity to answer the five interrogatories propounded to them; where the court granted an additional period of time in which to show cause why the motion for a decree *pro confesso* should not be granted, rather than summarily entering such a decree,—we can only conclude—assuming abuse of discretion to be the applicable test—that no abuse of discretion was shown in entering the decree *pro confesso* of April 21, 1964.

## II.

We next turn to question No. 2 which raises the propriety

of the entry of the final decree for specific performance of August 29, 1964 in view of the matters of defense to the bill which the defendants offered to prove. We have already decided that the hearing of May 15, 1964 was not a hearing on the merits of the defendants' defenses. In spite of argument of defendants' new counsel with respect to those defenses, the only testimony introduced was that respecting the plaintiffs' damages. In fact, the motion to set aside the interlocutory decree had already been denied before the testimony was taken. In the absence of any other hearing held by Chief Judge Boylan, we take it as established that the defendants have never had their day in court with regard to the meritorious defenses they assert. But this is not necessarily fatal. Maryland Rule 675 a 1 provides:

> "Where a bill is taken *pro confesso,* a final decree may be entered at any time after the expiration of thirty days from the entry of the order of *pro confesso,* if an answer or other defense is not interposed, and the allegations of the bill or petition present a proper case for relief."

Maryland Rule 675 a 3 provides:

> "At any time after a decree *pro confesso* shall have been entered, and before final decree, upon motion or upon its own initiative, the court may set aside the decree, and permit the filing of an answer or the interposing of other defense."

There is some ambiguity as to whether the party against whom the interlocutory decree has been entered may file an answer as a matter of right, or only with leave of court. The ambiguity was resolved in favor of the latter construction in *Guerriero v. Friendly Finance Corporation, supra,* where Judge Hammond for the Court said (at page 222), "The defense may be filed not by the unilateral act of one party filing or tendering it, but only with the court's permission." This interpretation makes the equity procedure more analogous to that at law upon the entry of an interlocutory or default judgment

under Rule 648, and gives real meaning and weight to this type of interlocutory decree. Discretion being the controlling test, we are of the opinion that upon an appeal from a final decree entered upon a decree *pro confesso,* without a hearing on the merits of the suit, we may determine *inter alia* whether the refusal of the lower court to hear and determine the merits of the case of the party in default was an abuse of the discretion reposed in it.

Under the circumstances of this case we hold that the refusal of the lower court to hear evidence on, and to determine the merits of, the defendants' proffered defenses constitutes an abuse of the discretion given by Maryland Rule 675 a 3, and that the final decree of specific performance dated August 29, 1964 must be reversed. The Maryland Rules of Procedure should, of course, be liberally construed so as to effectuate their purposes and to do justice between the parties. *Richardson v. Richardson,* 217 Md. 316, 142 A. 2d 550 (1958). One of the purposes of Rule 675 is to permit the court to entertain a defense to the merits of a case, even after it has entered up an interlocutory decree, where it feels that this course of action is justified. See *Webster v. Archer,* 176 Md. 245, 252, 4 A. 2d 434 (1939). Another purpose of this Rule is to enforce Rule 417 and to prevent the entry of the interlocutory decree from being ineffectual or nugatory (e.g., to preclude defenses from being as freely interposed after its entry as before it). Balancing these somewhat conflicting objectives, we feel that in the exercise of a sound judicial discretion, Judge Boylan should have heard the Millers' defenses. The defense of incompetency, of course, goes to the very existence of Miller's capacity to contract. The resolution of this issue may determine whether the paper writing which he signed is as to him an enforceable agreement or a mere nullity. And, if the disability existed as of April 21, 1964 a decree *pro confesso* could not legally be passed; see Rule 675 c. Compare Rule 205 and the liberal definition of "incompetent" contained in Rule R70. Also, see *Dungan v. Vondersmith,* 49 Md. 249 (1878). Similarly, defendants' assertion that the written document was not the complete agreement of the parties and that the time for performance had been

extended would involve the enforceability of the terms of the agreement by a court of equity.

### III.

It is impossible at this time to answer question No. 3. Since the defenses mentioned above have never been proved, we cannot predict whether or not the defendants will ultimately prevail upon them. We decide only that the chancellor abused his discretion in refusing defendants an opportunity to prove them.

The final decree dated August 29, 1964 will be reversed; the decree *pro confesso* dated April 21, 1964 will be retained pending the outcome of a hearing on the merits of the defenses which we have outlined. After such hearing has been held, the chancellor will then determine whether or not the defendants have established a valid defense to the plaintiffs' bill of complaint, and will vacate the interlocutory decree or extend it into a new decree for specific performance or other appropriate relief, accordingly.

### IV.

On remand, the issue of plaintiffs' damages may also be before the court for determination.

As stated at the outset of this opinion, the Talbotts have cross-appealed from the chancellor's decree insofar as it denies them money damages for certain losses and expenses allegedly caused by the failure of the Millers to convey Foxhill on the date specified in the parties' contract. These items of damages are said to include: payment of additional rent on their former residence; payment of rent for premises temporarily occupied pending the outcome of their suit to compel a conveyance of Foxhill; and costs of storing furniture, of boarding pets and of transporting a child to a school near Foxhill in which he had been enrolled in anticipation of settlement. The lower court held that these consequential losses could not be awarded under the plaintiffs' second prayer for relief ("And for such other and further relief as the nature of their cause may require"). In the last paragraph of a written opinion filed August 31, 1964, Judge Boylan states:

> "In this case the plaintiffs ask for specific performance. They do not assert any claim for damages

anywhere in the allegations. A decree *pro confesso* was passed upon the failure of the defendants to answer interrogatories. The decree *pro confesso* amounts to an admission of the allegations of the bill. This admission extends only to the allegations of the bill. The allegations of the bill cannot be impeached by the defendant, nor can they be contradicted by the plaintiffs. The allegations being thus admitted, it is to be considered whether they are sufficient to entitle the plaintiff to the relief sought. If they are not sufficient, the plaintiff cannot resort to the answer of the defendant, or the proof, or any extraneous matter to supply the defect in the charges contained in the bill. Miller's Equity, page 342, sec. 275 and cases mentioned in the footnotes."

It is not altogether clear whether the chancellor held the allegations of fact of the bill of complaint, on the one hand, or the general prayer for relief, on the other hand, to be insufficient as a basis for a pecuniary recovery. Treating the two together, we are of the opinion that the allegations of the bill of complaint—setting out a contract for the sale of land, the extension agreement, correspondence between the parties, the failure of the defendants to appear at the time and place specified for settlement and the continuing refusal of the defendants to convey their land—are sufficient to authorize an award for damages, in this case, in addition to specific performance, under a prayer for such further equitable relief as the nature of the cause may require. A claim for damages in a suit for specific performance is not necessarily a "contradiction" of a prayer for specific performance but, on the contrary, may be quite compatible with it.

In *Walzl v. King*, 113 Md. 550, 77 A. 1117 (1910) our predecessors recognized that an equity court had jurisdiction to grant monetary relief in addition to specific performance and held that if the plaintiff-vendee in the specific performance suit failed to assert such a monetary claim, he was barred by the final decree in the equity suit, upon the principal of res judicata, from thereafter asserting the monetary claim in an action at law.

The record in the *Walzl* case indicates that the prayers for relief in the bill of complaint were for specific performance and for other and further relief. Judge Burke, speaking for the Court stated:

> "In the specific performance case the Court had jurisdiction to settle all the rights of the parties to the suit, including any damages the vendee may have sustained by the vendor's breach of the contract, and Abrahams and his assignee, the plaintiff in this suit, cannot again litigate any question or any claim which might have been urged in that suit. 1 *Pom. Eq. Juris.*, sec. 181, and cases cited in note; *The Insurance Company v. Ryland,* 69 Md. 437" (p. 550 of 113 Md.).

In *Greenstone v. Claretian Theological Seminary,* 173 Cal. App. 2d 21, 343 P. 2d 161 (1959), the purchaser in a suit for specific performance made no claim for "damages" as such, but the lower court nonetheless allowed him a deduction from the purchase price equal to the net rents and profits received by the defendant-seller. The appellate court stated that the money recovery was not a separate cause of action, for legal "damages" for "breach", but was rather a species of ancillary or supplementary relief incident to a decree for specific performance. Equity was said to possess full power to pass monetary decrees in order to do complete justice between the parties. The Restatement view is even stronger; 2 Restatement of Contracts, section 384, comment d states:

> "In a suit for specific performance the plaintiff may properly ask for other forms of relief in the alternative, or for such other relief supplementary to specific performance. Whether so asked by the plaintiff or not, it is within the discretion of the court to give such remedies as full and complete justice may require (see secs. 359, 363, 365)."

The Supreme Court of South Carolina reached the same conclusion in *Butler v. Schilletter,* 230 S. C. 552, 96 S. E. 2d 661 (1957).

The jurisdiction of the equity court to decree compensation as ancillary to the decree for specific performance is defined

and explained by Pomeroy, *Equity Jurisprudence* (5th ed. 1941), volume 1, sec. 237 b :

> "As an outgrowth of the doctrine that a court of equity, when jurisdiction is once assumed on equitable grounds, will adjudicate all matters properly presented by and actually involved in the case at hand, it is ordinarily held that where the case is a proper one for specific performance the chancellor may, as ancillary to the relief given, decree compensation or damages. Hence, having jurisdiction for the purpose of specifically enforcing performance of a contract, the chancellor has full jurisdiction, in addition to decreeing specific performance, to award such legal damages as have resulted from delay in performance of the contract."

See 81 C.J.S. "Specific Performance," Sec. 162b, pages 769-770.

The cross-appellants seek compensation for a wide variety of expenses and losses allegedly suffered by them as a consequence of the delay in performance. We are of the opinion that it is neither necessary nor feasible for us to rule at this time whether any particular item of damage is or is not recoverable in the equity suit. The question, in part, and in the first instance, is a problem of proof. We leave this question for solution to the chancellor if he finds for the plaintiffs upon the remand of the case to the lower court.

*Final decree dated August 29, 1964 reversed and case remanded for further proceedings consistent with the views expressed in this opinion, the costs in the lower court and in this Court to abide the final decree entered after further proceedings upon the remand of the case.*