# EUGENIA B. FRITZ *v.* ERNEST S. FRITZ

[No. 431, September Term, 1976.]

*Decided February 3, 1977.*

The cause was submitted on brief to MENCHINE, MOORE and LOWE, JJ.

Submitted by *William R. Voltz* for appellant.

No appearance for appellee.

MENCHINE, J., delivered the opinion of the Court.

Ernest S. Fritz (husband) was divorced *a vinculo matrimonii* from Eugenia B. Fritz (wife) by a decree of the Circuit Court for Montgomery County passed on October 21, 1975. His bill had been grounded on desertion. The decree read as follows:

> "ADJUDGED, ORDERED and DECREED, that the Plaintiff ERNEST S. FRITZ, be, and he hereby is, divorced *a vinculo matrimonii* from the Defendant EUGENIA B. FRITZ, and it is further
>
> "ORDERED, that Plaintiff pay the costs of this suit."

It will be noted that the decree did not deal in any way with the property rights of the parties or with the maintenance and support of a minor child of the parties.

Wife, through counsel, on November 19, 1975, filed a "motion to vacate judgment" — within 30 days after passage of the final decree.

The oral opinion of the chancellor included the following comment: "when I read the pleadings and I read everything." We assume from this language that no evidentiary hearing was had upon wife's motion. In any case, the transcript of the hearing below as it appears in the record is limited to an oral opinion of the chancellor.

The following order was passed on March 17, 1976:

> "ORDERED, that the judgment herein be and it hereby is vacated and remanded to the Domestic Relations Master for hearing and consideration as to the property rights to be adjudicated, if any, and it is further
>
> "ORDERED, that as to the divorce granted by the judgment herein, the defendant's motion be and it hereby is denied."

It will be observed that the judgment was vacated as to a subject it had not addressed but the motion was denied as to the subject it did address.

The wife has appealed from the denial of her motion to vacate the divorce decree.

A motion to vacate, interposed within 30 days after entry of final judgment, is directed to the discretion of the trial court. Maryland Rule 625 a. *Clark Baridon v. Union Co.*, 218 Md. 480, 483, 147 A. 2d 221, 222-23 (1958).

In *Hamilton v. Hamilton*, 242 Md. 240, 218 A. 2d 684 (1966), the Court of Appeals, although affirming denial of such a motion in a divorce proceedings, declared the rule and policy in appellate assessment whether discretion in such cases has been abused, saying at 243 [686]:

> "When a motion is made to set aside an unenrolled decree the trial court possesses an extremely broad power of revision and must exercise its discretion liberally 'lest technicality triumph over justice.' *Eshelman Motors v. Scheftel,* 231 Md. 300, 189 A. 2d 818 (1963). The trial court's discretion is not restricted in regard to setting aside an unenrolled decree as it is where the decree has become enrolled, after which it may then only be revised on grounds of fraud, mistake or irregularity. Maryland Rule 625a. In the case of an enrolled decree even a possible error in the entry of a summary judgment may not constitute such a mistake as would warrant setting it aside. *Rhodes Co. v. Blue Ridge Co.*, 218 Md. 329, 146 A. 2d 771 (1959). See *Tasea Investment Corp. v. Dale*, 222 Md. 474, 160 A. 2d 920 (1960) and *Newark Trust Co. v. Trimble*, 215 Md. 502, 138 A. 2d 919 (1958).
>
> "While there is a strong public policy in favor of sustaining the finality of divorce decrees (*Leatherbury v. Leatherbury*, 233 Md. 344, 196 A. 2d 883 (1964)), this policy would not operate in regard to an unenrolled decree before parties could have changed their position and relied on it to their detriment. Cf. *Pryor v. Pryor*, 240 Md. 224, 213 A. 2d 545 (1965) and cases cited therein."

In the subject case there is no evidence that the parties have changed their position.

We shall detail the proceedings below from the time of the filing of the bill of complaint to the time of the passage of the decree.

Husband's bill of complaint had alleged that he had been a resident of Montgomery County for more than one year; that wife was an adult resident of Rome, Italy; that the parties had been married on November 12, 1949 in Charleston, South Carolina; that three children were born of the marriage, only one of whom was a minor (residing with wife in Rome, Italy); that wife on June 26, 1973, deserted and abandoned him without just cause or reason and that such desertion was continuous and uninterrupted since that date. He prayed for divorce *a vinculo matrimonii*, with a general prayer for such other and further relief as may seem just and proper.

On the same date the attorney for husband filed an order directed to the Clerk of Court requesting issuance of "summons per Rule 107." [1]

On April 24, 1975, the attorney for husband filed in the proceedings an affidavit purporting to be in compliance with the provisions of Rule 107 but reading as follows:

> "I HEREBY CERTIFY that I personally delivered to the Rockville Post Office an envelope containing a true copy of the Bill of Complaint of Divorce A Vinculo Matrimonii filed herein and a true copy of the summons *directing the defendant to file an answer or make other defense within 60 days after completion of service,* [2] addressed to the Defendant, EUGENIA B. FRITZ, at Viculo del Gallinaccio, 8, Int. 10, 00187 Roma, Italy; and that I

---

**1.** Maryland Rule 107, dealing with service of process outside the State.

**2.** Such a direction was erroneous. Under Rule 107 b a defendant outside of the United States has ninety days to answer. No jurisdictional issue arises by reason of such error, however, because the defendant, by filing a motion contesting the merits of the cause, waived any jurisdictional complaint she might otherwise have asserted. McCormick v. Church, 219 Md. 422, 149 A. 2d 768 (1959).

prepaid the registered mail costs and the restricted delivery (addressee only) costs as well as costs for a return receipt and other postage as evidenced by the attached original receipt for registered mail, labeled Exhibit 1; and that I received back through the postal service the attached signature card, labeled Exhibit 2, which bears the signature of the defendant as having received it on March 21, 1975." (Emphasis added.)

Decree *pro confesso* was taken on July 14, 1975.

On July 30, 1975, notice was given to husband's counsel — but not to wife — that a hearing would be had on September 11, 1975, at 11 a.m. before a Domestic Relations Master.

On September 3, 1975, a letter dated August 25, 1975, addressed by Eugenia B. Fritz to the Clerk of Court was filed in the proceedings. The letter read as follows:

> "Viculo del Gallinaccio, 8, Int. 10
> 00187, Rome, Italy
>
> Dear Mr. Smith:
>
> This is my defense to Equity No. 51837, with special reference to Article 5 of said Equity. It represents also reply to James R. Trimm, Attorney for Plaintiff, Ernest S. Fritz.
>
> (signed) Eugenia B. Fritz"

Attached to that letter and dated simultaneously therewith, was a letter purporting to have been addressed to counsel for husband containing, *inter alia,* the following allegations:

> ". . . the Plaintiff has perjured himself in the following manner; the phrase, 'without just cause or reason,' is a deliberate untruth in Article 5, and I am prepared to present evidence and witnesses to testify that in fact that there *was* just cause and very concrete reason for my action. A statement was made by the Plaintiff on or about May 30, 1973 in the presence of my parents and my children that

he intended to divorce me. This was a statement made by the Plaintiff in a rare instance of sobriety and with all deliberate forethought. I further contend that said Plaintiff also stated: 'I found you in Charleston and I am going to leave you in Charleston'. . . .

"In regard to the phrase 'without just cause,' I would call 'just cause' the fact that Plaintiff over a period of years has: 1) threatened my life with physical violence and that these threats were more often than not executed. 2) locked me out of own home, making me spend the night in the garage. 3) wilfully destroyed articles of furniture in our home. 4) was subject to continual periods of inebriation. 5) jeopardized my mental and physical health; 6) received compromising letters from two women on or about July 15, 1968 — said letters are in my possession."

Notwithstanding the filing of the tardy proper person answer [3] of wife, the hearing before the master went forward as scheduled without notice to her. *Harrison v. Morton*, 87 Md. 671, 677, 40 A. 897, 899 (1898).

On October 6, 1975, the Domestic Relations Master filed his report. The report noted that the "defendant did not appear at the hearing and was not represented by counsel." The report also noted that "The defendant having defaulted by reason of her failure to file a responsive pleading, the Court signed a *Decree Pro Confesso* on July 14, 1975." The report made no reference to wife's proper person answer in the form of the letters referred to herein, *supra*. The report recommended that "Ernest S. Fritz be awarded a divorce *a vinculo matrimonii* . . ." and that "the costs . . . be paid by the plaintiff." The report noted, however, that a copy had been mailed to wife at the address appearing on her letters, *supra*.

October 21, 1975, a decree was passed granting to husband a divorce *a vinculo matrimonii*.

---

3. *See* Maryland Rules 301 f; S71 and S72.

On November 19, 1975, the wife, through counsel, filed her motion to vacate, that read in pertinent part as follows:

> "1. Defendant is presently residing in Rome, Italy and mail service to and from Rome is very slow. Upon receiving the report of the Domestic Relations Master, Defendant immediately attempted to communicate with Counsel to object to the Decree being entered and to take whatever other actions were necessary for her to have a full hearing of her case. Upon receiving prior Court papers, Defendant had written directly to the Court and was of the opinion and belief that her letter would serve as a responsive pleading and avoid default.

> "2. Defendant has a meritorious defense to Plaintiff's cause of action and a counter claim she wishes to pursue. A copy of the Answer and Counter-Claim is attached hereto and the allogations [sic] set forth therein adopted as a part of this Motion."

The "answer" referred to in the second paragraph of wife's motion denied that she had deserted and abandoned husband as alleged and alleged that "there are certain property rights to be adjudicated." The answer prayed that the husband's bill of complaint be dismissed; that she be awarded custody of a minor child and that she be granted other and further relief.

The "counter-claim" referred to in the wife's motion, alleged, *inter alia*, (as summarized by this Court):

(a) That she was always a good and dutiful wife.

(b) That she had been treated "in a cruel, unbearable, bulliing [sic] and abusive manner, has many times struck and beat her, such to constitute cruelty . . . or constructive desertion and abandonment."

(c) That husband, on "May 30, 1973 told Defendant and Counter Plaintiff that he was going to

divorce her and thereafter he left the family which was then residing in Charleston, South Carolina, and moved to Rockville, Maryland where he resided with relatives and made no attempt to bring his wife or family with him or to provide a place for them to live in Maryland."

(d) "That the parties have remained separate and apart without cohabitation . . . ."

(e) That there is no hope of reconciliation.

(f) That there are certain property rights to be adjudicated.

(g) That husband "is gainfully employed and able to support wife who, although gainfully employed does not earn a sufficient income to support and maintain herself and minor child."

The proposed "counter-claim" prayed that she be divorced *a vinculo matrimonii*; that she be awarded alimony, both *pendente lite* and permanent; that she be awarded custody of the minor child of the parties; that "she be awarded a one-half interest of the property rights of the parties"; [4] that she be awarded reasonable attorney fees and costs; that she be awarded support and maintenance of the minor child; and that "she be granted such other and further relief as to the Court may seem just and proper."

Maryland Rule 675 reads in pertinent part as follows:

"Rule 675. DECREE PRO CONFESSO . . . . . . . .
Equity

a. *Interlocutory and Final Decree — Setting Aside — Answer.*

* * *

---

4. The nature of the claimed property rights was undisclosed. We note that an equity court exercising its divorce jurisdiction has no authority to adjust the property rights of a husband and wife without statutory authority. Schwartzman v. Schwartzman, 204 Md. 125, 102 A. 2d 810 (1954); Bailey v. Bailey, 218 Md. 527, 147 A. 2d 747 (1959); Abell v. Abell, 12 Md. App. 99, 277 A. 2d 629 (1971), cert. den. 263 Md. 709. *See* Maryland Code CJ 3:603.

### 3. Answer — When May Be Filed.

At any time after a decree *pro confesso* shall have been entered, and before final decree upon motion or upon its own initiative, the court may set aside the decree, and permit the filing of an answer or the interposing of other defense. [5]

### 4. Conditions on Granting of Motion.

Such motion shall be granted only upon payment of the costs of the plaintiff up to that time unless the court by its order shall relieve the defendant of the payment of such costs upon such terms as the court shall prescribe for the purpose of avoiding expense or delay, and as justice may require.

### 5. Answer Not to Affect Validity of Prior Testimony.

The filing of such answer shall not affect the validity of any testimony previously taken."

Whether leave should be granted to file an answer or other defense is a matter left to the discretion of the chancellor. *Guerriero v. Friendly Finance Corp.*, 230 Md. 217, 222, 186 A. 2d 881, 883-84 (1962).

We think that appellate decisions indicate that leave to file an answer in such cases should be freely granted when it appears that a colorable meritorious defense has been shown.

The case of *Miller v. Talbott*, 239 Md. 382, 211 A. 2d 741 (1965), is analogous to the subject, although relating to a bill for specific performance rather than for divorce. The Court said at 388, *et seq.* [745-46]:

"We next turn to question . . . which raises the propriety of the entry of the final decree for specific performance of August 29, 1964 in view of the matters of defense to the bill which the defendants offered to prove. We have already decided that the hearing of May 15, 1964 was not a hearing on the

---

**5.** At an earlier period the Rules of Court required that a motion to set aside a decree *pro confesso* must be filed within thirty days after its entry. *See* Richardson v. Richardson, 217 Md. 316, 320, 142 A. 2d 550, 552-53 (1958).

merits of the defendants' defenses. In spite of argument of defendants' new counsel with respect to those defenses, the only testimony introduced was that respecting the plaintiffs' damages. In fact, the motion to set aside the interlocutory decree had already been denied before the testimony was taken. In the absence of any other hearing held by Chief Judge Boylan, we take it as established that the defendants have never had their day in court with regard to the meritorious defenses they assert. But this is not necessarily fatal. Maryland Rule 675 a 1 provides:

> 'Where a bill is taken *pro confesso*, a final decree may be entered at any time after the expiration of thirty days from the entry of the order of *pro confesso*, if an answer or other defense is not interposed, and the allegations of the bill or petition present a proper case for relief.'

Maryland Rule 675 a 3 provides:

> 'At any time after a decree *pro confesso* shall have been entered, and before final decree, upon motion or upon its own initiative, the court may set aside the decree, and permit the filing of an answer or the interposing of other defense.'

"There is some ambiguity as to whether the party against whom the interlocutory decree has been entered may file an answer as a matter of right, or only with leave of court. The ambiguity was resolved in favor of the latter construction in *Guerriero v. Friendly Finance Corporation, supra,* where Judge Hammond for the Court said (at page 222), 'The defense may be filed not by the unilateral act of one party filing or tendering it, but only with the court's permission.' This interpretation makes the equity procedure more analogous to that

at law upon the entry of an interlocutory or default judgment under Rule 648, and gives real meaning and weight to this type of interlocutory decree. Discretion being the controlling test, we are of the opinion that upon an appeal from a final decree entered upon a decree *pro confesso*, without a hearing on the merits of the suit, we may determine *inter alia* whether the refusal of the lower court to hear and determine the merits of the case of the party in default was an abuse of the discretion reposed in it.

"Under the circumstances of this case we hold that the refusal of the lower court to hear evidence on, and to determine the merits of, the defendants' proffered defenses constitutes an abuse of the discretion given by Maryland Rule 675 a 3, and that the final decree of specific performance dated August 29, 1964 must be reversed. The Maryland Rules of Procedure should, of course, be liberally construed so as to effectuate their purposes and to do justice between the parties."

We disagree with the conclusion reached by the chancellor that "she has not stated enough grounds in her motion or anything else to show she had a meritorious defense." We think her proposed answer, coupled with her proposed cross-claim, (the latter incorporated in her answer by reference) alleged a colorable meritorious defense. *Compare Franciscus v. Franciscus,* 31 Md. App. 78, 354 A. 2d 454 (1976), wherein this Court said at 81 [457]:

"Appellant, in his brief filed in this Court, steadfastly maintains that he has a 'meritorious defense' to the appellee's petition. He cites Md. Rule 675 a 3 which permits the trial court to set aside a decree pro confesso when '. . . an answer or the interposing of other defense' is filed. The rule is, however, permissive, not mandatory. Furthermore, *Miller v. Talbott,* 239 Md. 382, 211 A. 2d 741 (1965), and *Richardson v. Richardson,* 217 Md. 316, 142 A.

2d 550 (1958), relied upon by appellant, are inapposite. Both cases were concerned with the interposing of a *meritorious* defense. We interpret the term 'meritorious defense' to be one that goes to the core, heart, merits, essence, or substance of the case. Dilatory, procedural, jurisdictional, or other technical objections are not included within its ambit."

The case of *Richardson v. Richardson*, 217 Md. 316, 142 A. 2d 550 (1958), is factually quite similar to the subject case. In that case an order dismissing a motion to strike a decree and a decree *pro confesso* was reversed and the cause remanded for further proceedings. The decision in *Richardson* delineated the course to be followed upon remand (at 322-23 [554]). We shall follow a similar course.

It may be that upon a new hearing on the merits of the appellant's motion to strike that the chancellor may conclude that the motion should not be granted. In that event, a decree of divorce such as that passed on October 21, 1975, could be entered without any further hearing, so far as we are presently advised. No objection was made in this Court to the correctness of the decree of divorce on the record before the court, except on the ground that the wife had been denied the opportunity to present her defense by reason of the ruling on the motion to strike the decree *pro confesso*.

If, on the other hand, the chancellor should conclude that the motion should be granted and that the answer and cross-complaint should be filed, the case would continue in ordinary course. Terms may be imposed under Rule 675 a 4, as a condition of granting the motion.

> *Order dated March 17, 1976, reversed; decree dated October 21st, 1975, vacated; case remanded for further proceedings not inconsistent with this opinion; the costs of this appeal to be paid by the appellee.*